UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAIJON GRUBBS, | ) |
| Petitioner, | ) |
| v. | ) No. 1:21-cv-01133-TWP-TAB |
| WENDY KNIGHT, | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

This matter is before the Court on Petitioner Daijon Grubbs habeas petition under 28 U.S.C. § 2254, challenging his prison disciplinary conviction under Prison Case No. CIC 20-08-0019. For the reasons explained below, the habeas petition is **DENIED**.

**I. LEGAL STANDARD**

Prisoners in Indiana custody may not be deprived of good-time credits or credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. BACKGROUND

### A. Charging Documents

This case began when Investigator Stevens found a ripped-up letter that was addressed to Mr. Grubbs. After piecing the letter back together, Investigator Stevens believed that the letter described a plan to bring contraband into the Pendleton Correctional Industrial Facility. After completing an investigation that lasted a little more than four months, Investigator Stevens wrote a Report of Conduct charging Mr. Grubbs with attempting or conspiring to traffic in violation of prison code A 111/113. The Report of Conduct states:

> On 8/3/2020 at approximately 1200 hours, I, Investigator Stevens, completed an investigation into controlled substances being trafficked into CIF. On 3/27/2020, a ripped up letter found in BHU was pieced back together and reviewed. Offender Grubbs was identified as the recipient of the letter indicating he had plans of attempting to have controlled substances into the facility. Throughout the investigation Grubbs' GLT correspondence was monitored and indicated he intended to have laced legal mail trafficked into the facility. The details supporting this investigation can be found in the confidential ROI.

Dkt. 9-1.

Investigator Stevens also wrote the following Report of Investigation:

> On 3/27/2020 an investigation into trafficking was initiated after a ripped up letter was located in BHU. The letter was pieced back together and then delivered to the I&I Office. A review of the letter indicated an offender assigned to another housing unit was the father of an offender assigned to BHU. The letter described routes contraband could be trafficked into the facility and also discussed controlled substances. A review of all offenders in BHU was conducted with the finding of Daijon Grubbs #200772 being the son of Offender Carl Reed #905097. The letter indicates it was not the first means of communication between both offenders and was a response from Reed to Grubbs for how to traffic controlled substances into the facility. GTL correspondence of Grubbs was reviewed throughout the investigation. Phone calls made from Grubbs show he directed individuals on the outside of the facility to buy chemicals identified as synthetic cannabinoids and indicated he planned on having the chemicals introduced into the facility via legal mail. CIF Confidential Case 20-CIC-0034 resulted in a substantiated finding based off of preponderance of the evidence.

Dkt. 9-2.

### B. Phone Call Transcripts

Investigators produced seventeen pages of transcripts documenting Mr. Grubbs' phone calls between April 11, 2020, to June 17, 2020. Dkt. 9-8. During these phone calls, Mr. Grubbs did not expressly state that he planned to traffic contraband into the facility. But he used opaque language to discuss a number of financial transactions. *Id.*

On April 11, Mr. Grubbs said, "Like he only gonna send 200 of that to that person then I'm bout to send 100 to somebody else to get a bag . . . cuz I couldn't order this week." *Id.* at 1. At times, he said that these transactions involved money lost at the "poker table," money for "shoes," and money for "the car." *Id.* at 1-3. Mr. Grubbs' told the callee, "It's just an online thing you just gotta get online and go to the website and then I'ma give you the numbers to look for[.]" *Id.* at 2. Mr. Grubbs told the callee that the money goes to " the same one I always have you send money what is it QBalls Sewers uh QBall . . . the Q-QBall one I owe him $200 for the poker table[.]" *Id.* at 3.

On April 22, Mr. Grubbs asked about a "transport order." The callee informed told him "We be tryin but that s*** is d*** near extinct." Mr. Grubbs told him to "get real resourceful." Mr. Grubbs expressed concern about his "investment" and talked to the callee about "maneuvering with the money" for him. *Id.* at 4.

On April 23, Mr. Grubbs said, "I'm tryna see what you can uh help me out wit some uh with some legal mail . . . you na'mean some legal mail?" The callee responded "I don't know you jus prolly have to ask *inaudible*." Mr. Grubbs then said, "Yep . . . we got a m***f*** . . . that be doin that legal s***." Mr. Grubbs said that another person told him "they hard to find . . . I'm sayin maneuver with my own s*** just to make sure you get em for me that's what I'll do." *Id.* at

4-5. Mr. Grubbs talked about an unnamed person and said "he got . . . the legal the legal work." *Id.* at 5.

On April 26, the callee told Mr. Grubbs, "Yea Legal Mail jus got some legal mail." Mr. Grubbs then told the callee "tell him . . . bring that to you for me so I can uh send this to a m***f***." *Id.* at 5.

On April 27, Mr. Grubbs said that he wanted to talk about "some legal work." The callee said, "Uh legal work legal work he know what you talkin bout." Mr. Grubbs said he needed "somebody . . . close to me . . . that know what they doing . . . so I can f*** with them on my own . . . instead of going through a m***f***." Mr. Grubbs went on to say, "I need you like I said find somebody that's that's on that s*** that I can pay myself." Later, the callee asked, "You said 70?" And Mr. Grubbs responded "Yea." *Id.* at 5-6.

Later that same day, Mr. Grubbs made a call and asked the callee if he knew someone "with the legal work." The callee said, "nope but my barber just said that he got a *inaudible* I put something in his ear yesterday that's crazy you said that." Mr. Grubbs then said, "I jus . . . see whats up a m***f*** need it m***f***s know I'm sayin need they own g**d*** car." The callee responded, "Hell yea." *Id.* at 6.

On May 3, Mr. Grubbs told the callee to go to the website "RJResearchchemical.com." Mr. Grubbs asked "My pops . . . ain't call you or nothin have you again did he." The callee said, "Nah . . . I aint talk to him yet." Mr. Grubbs then said, "I heard from him today and . . . he gave me the play and it's . . . gone cost $800 but we goin half on it." *Id.* at 7.

On May 6, the callee told Mr. Grubbs, "yo daddy called . . . the other day . . . I guess he said $800[.]" Mr. Grubbs replied "Yea . . . me and him . . . we split." The callee then said "My *inaudible* she said she got uh like 13[.]" Mr. Grubbs said, "I got the little situation from him . . .

4

I know the play but I'm just waitin to see . . . if bro really got a-a- trans order y'no I'm sayin so we can make sure cuz I aint tryna give up 3-400 right now and just have that s*** just sittin." *Id.* at 7-8.

On May 7, Mr. Grubbs told the callee, "I should be havin a play man sometime in a couple weeks though man but meanwhile s*** I need some money on my books." He told the callee "everything you been doin I been taken off what you supposed to give me." *Id.* at 8.

On May 10, Mr. Grubbs told the callee, "What you need to be tryin . . . [to] figure out . . . the legal way man try to have my lawyer come see me I'll pay my lawyer like $500 . . . bring the paperwork to me." *Id.*

On May 13, Mr. Grubbs said, "What's up man . . . you in a position for . . . a play . . . uh police walkin past right now uh uh some legal work I got I got a play on some of that[.]" *Id.* at 9.

On May 24, Mr. Grubbs said, "I got a play I got a play coming through . . . in a day or two so I'ma need you on some . . . I'm doin something with inside here I'ma uh send somebody some money for somethin . . . I'm sayin maneuvering in here a little bit at a time as I can s*** when s*** come through." *Id.* at 11.

On May 26, Mr. Grubbs said, "I been studying the word of God . . . you feel what I'm sayin I been in Bible study." The callee asked "So what you tryin what you want me to send you a Bible or somethin[?]" Mr. Grubbs replied, "Yea bro." *Id.* at 12.

On June 8, Mr. Grubbs asked, "Bro . . . can you do that today[?]" The callee responded "do what get the Bible." Mr. Grubbs then said, "Yea . . . no stupid dumb a** Bible . . . it can't be no hard back bro it gotta be a soft back feel me . . . it gotta be a soft back and make sure it got thick pages . . . you feel me[?]" *Id.* at 16-17.

5

### C. Disciplinary Hearing

This matter proceeded to a disciplinary rehearing on February 11, 2021. Dkt. 9-5. At the hearing, Mr. Grubbs questioned Investigator Stevens about the investigation. This questioning was reproduced in a Notice to Lay Advocate / Witness form:

> **GRUBBS**: A conspiracy you have to prove that two or more people agree on committing a crime. Did the letter you found have my name on it?
>
> **STEVENS**: No[.]
>
> **GRUBBS**: Do you have camera footage or any form of evidence that I received the letter personally?
>
> **STEVENS**: No.
>
> **GRUBBS**: During the investigation do you have any proof of me agreeing to traffic any drugs into the facility?
>
> **STEVENS**: No.
>
> **GRUBBS**: In the phone the calls you listed did I tell anyone to send any laced legal mail to the facility?
>
> **STEVENS**: No in the letter you did not say that verbatim.
>
> **GRUBBS**: Did you find any laced legal mail during the investigation?
>
> **STEVENS**: No. At that point it wouldn't of been conspiring.

Dkt. 9-7.

As part of this investigation, Mr. Grubbs had been brought in for questioning. The interview was recorded and reviewed at the disciplinary hearing. The contents of the video were summarized by the hearing officer on a Video Evidence Review form:

> During the interview Grubbs admits that Carl Reed is his father. He admits he was living in the TV room when the ripped letter was confiscated. Grubbs denied that the letter was meant for him. He did say multiple [times] during the interview "you really put the letter back together." Grubbs denied passing any kites. Grubbs denied knowing Nicholas Gadd. Grubbs admits to having somebody look him up. Grubbs

    admitted to knowing what synthetic drugs are. Grubbs did not admit to trafficking or attempting to traffic.

Dkt. 9-6.

    After reviewing the evidence, the disciplinary hearing officer found Mr. Grubbs guilty. This guilty finding was explained in a written Report of Disciplinary Hearing form. The form included Mr. Grubbs' statement at the hearing denying guilt. It also noted that the hearing officer considered staff reports, Mr. Grubbs' statement, evidence from witnesses (specifically Investigator Stevens), phone transcripts, the letter, the report of conduct, the report of investigation, and video evidence. The hearing officer concluded "CCF 20-CIC-0034 was reviewed along with interview, phone transcripts, witness statement and letter. With all evidence considered more likely than not Grubbs was conspiring to traffic. All evidence is clear." Mr. Grubbs received a loss of 180 days earned credit time and a demotion in credit-earning class. Dkt. 9-5.

    Mr. Grubbs' appealed this decision to the facility head and the final reviewing authority. Dkts. 9-9, 9-10, 9-11. These appeals were denied. *Id.* Mr. Grubbs then filed this habeas petition under 28 U.S.C. § 2254. Dkt. 1.

### III. DISCUSSION

    Mr. Grubbs' petition raises two grounds for review: that the evidence is insufficient to support his disciplinary conviction, and that he was denied the right to a written statement summarizing the evidence that supports his conviction.[1]

---

[1] In his reply brief, Mr. Grubbs argues that he did not have advance written notice of the disciplinary charge. *See* dkt. 16, pp. 12-13. This argument is waived because Mr. Grubbs raised the issue for the first time in his reply brief. *See Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007) ("Arguments raised for the first time in a reply brief are waived.").

### A. Sufficiency of the Evidence

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 600, 675 (7th Cir. 2012) ("The some evidence standard is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence standard" is much more lenient than the beyond a reasonable doubt standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).

There is some evidence to support Mr. Grubbs' conviction. The transcripts of Mr. Grubbs' phone calls include opaque language about an ongoing business enterprise between Mr. Grubbs, his father, and individuals outside the facility. Dkt. 9-8. Mr. Grubbs' often talked about "legal mail" in contexts that appears to be unrelated to correspondence from an attorney or any legal disputes. He suggests that "legal mail" is a source of financial gain. At one point, he directed the callee to a the website RJresearchchemicals.com. and requests "transport orders." He talks about financial "maneuverings" and getting money from an "investment."

Investigator Stevens reviewed these transcripts and determined that Mr. Grubbs' was attempting to bring contraband into the facility by lacing phony legal mail with synthetic drugs. Investigator Stevens also found a letter and determined that it described a plan to bring contraband into the facility. The hearing officer considered this evidence and found it to be more credible than Mr. Grubbs' statement denying any involvement in a trafficking conspiracy.

Mr. Grubbs' argument that the hearing officer should have discounted this evidence based on his cross-examination of Investigator Stevens, and based on the fact that the report of conduct does not name the other members of the conspiracy is a request to reweigh the evidence, which

8

the Court may not do. *See Calligan v. Wilson*, 362 F. App'x 543, 545 (7th Cir. 2009) (citing *Hill*, 472 U.S. at 455; *Scruggs*, 485 F.3d at 941).

Mr. Grubbs' argument that there is insufficient evidence because there is no evidence that he successfully brought contraband into the facility is unpersuasive. He was found guilty of "Attempting by one's self or with another person or conspiring or aiding and abetting with another person to commit" trafficking. *See* dkt. 9-12, p. 2, code sections A 111/113. Prison officials did not need to prove that his attempts to traffic were successful. The evidence shows that he, along with other individuals inside and outside the facility, tried to bring contraband into the facility. This is all prison officials needed to prove to enter a disciplinary conviction.

Grubbs' argument that there is no evidence that he conspired with others to bring contraband into the facility is also unpersuasive. The transcripts of his phone calls provide evidence that he conspired with at least one person outside the facility and his stepfather to bring contraband into the facility. Accordingly, Mr. Grubbs' request for relief on this ground is **DENIED**.

### B. Written Statement

"Due process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs*, 485 F.3d at 941.. The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.*

The disciplinary hearing officer provided a written statement setting forth the basis for Mr. Grubbs' disciplinary conviction. Dkt. 9-5. The written statement explained that the finding of guilt was based on staff reports, witness statements, phone transcripts, the report of investigation, and the letter found by Investigator Stevens. *Id.* Despite Mr. Grubbs' statement denying the charge, the hearing officer found that this evidence makes it more likely than not that Mr. Grubbs'

attempted to bring contraband into the facility. *Id.* The written statement served its purpose of illuminating the evidentiary basis for the finding of guilt, and Mr. Grubbs' request for relief on this ground is **DENIED**.

### IV. CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 4/14/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DAIJON GRUBBS
200772
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064


David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov